OPINION
Scott Loveless appeals from the revocation of community control (probation) which was imposed Feb. 8, 2000. Loveless had pleaded guilty to domestic violence, a first degree misdemeanor. The victim was Holly Suchland, who is the mother of Loveless' son, Jayden. The trial court imposed nine "special conditions" of community control, two of which are implicated in this appeal:
 "Defendant is prohibited from any contact with Holly Suchland or the child Jayden Loveless until Defendant gets to the stage in counseling that the counselor writes the Court requesting contact. No contact is permitted with Holly until Holly attends counseling and the counselor writes the Court and requests contact. Any request for contact must be approved by the Court before any contact is made.
"Defendant shall serve the first five (5) days of his community control (probation) in the Champaign County Jail. Three (3) days are suspended. Defendant is given credit for two (2) days served."
In May, 2002, Loveless was charged with violating the "no contact with Holly Suchland" special condition. He appeared before the trial court May 13, 2002, with counsel, and expressly elected not to contest probable cause or the merits of the charged violation.
After statements by the prosecutor, defense counsel, and Loveless, the trial court revoked community control and imposed a six month jail sentence with credit for time served.
On appeal, Loveless advances two assignments of error, the first of which states:
 "THE TRIAL COURT ERRED WHERE, AFTER DEFENDANT VIOLATED HIS PROBATION BY PLACING A PHONE CALL TO THE MOTHER OF HIS CHILD, IT MODIFIED THE ORIGINAL SENTENCE FROM 5 DAYS JAIL TO 6 MONTHS JAIL WHEN DEFENDANT HAD ALREADY SERVED A PORTION OF THE ORIGINAL SENTENCE OVER TWO YEARS EARLIER BEFORE THE IMPOSITION OF A PROBATIONARY PERIOD."
The critical issue under this assignment is whether the five days in the county jail, imposed as a special condition of community control was, in actuality, a sentence. If so, the situation comes within the rule of State v. Draper (1991), 60 Ohio St.3d 81, which holds that where a defendant has received shock probation after serving part of his sentence, the defendant may not be sentenced more severely after his shock probation is revoked. If the five days in the county jail was not a sentence, then the rule of State v. McMullen (1983), 6 Ohio St.3d 244
applies, holding that where a defendant is sentenced, the sentence is immediately suspended, and the defendant is placed on probation without beginning to serve his sentence, a more severe sentence than originally imposed and suspended may be imposed upon defendant's probation being revoked.
The trial court imposed seven special conditions and sixteen general conditions of community control. It is unlikely, in our judgment, that the trial court intended the three days in the county jail that were suspended to be the outer limit of its ability to punish Loveless should he violate the conditions of community control so as to warrant revocation of community control. Rather, it would appear that the trial court determined that five days in the county jail were necessary to impress Loveless with the seriousness of his behavior and the seriousness of community control, but that the two days Loveless had already spent in the county jail were sufficient to make those points.
In any event, the five days in the county jail were expressly cast in terms of a special condition of community control and the six month sentence, with credit for time served, upon revocation of community control was certainly consistent with R.C. 2951.09:
 "When a defendant on probation is brought before the judge or magistrate under section 2951.08 of the Revised Code, the judge or magistrate immediately shall inquire into the conduct of the defendant, and may terminate the probation and impose any sentence that originally could have been imposed or continue the probation and remand the defendant to the custody of the probation authority, at any time during the probationary period."
(The State correctly observes that despite the trial court's use of the term "community control," this is a misdemeanor case that is not governed by the relatively recent massive overhaul of Ohio's felony sentencing law).
Finally, even if the suspended three days in the county jail was a sentence, which we do not think it was, the trial court's action still comes within the rule of McMullen.
According to the record, Loveless appeared for disposition January 21, 2000. The court did not immediately dispose of the case but "took the case under advisement (and) placed (Loveless) in the county jail pending decision." The trial court did not file its orders placing Loveless on community control and imposing special and general conditions until February 8, 2000. By that time, Loveless had spent two days in the county jail for which he was given credit. The three suspended days remained suspended until he appeared before the court May 13, 2002, when community control was revoked. In other words, Loveless had not served any of the suspended three day "sentence" and the trial court was free to impose a more severe sentence.
The first assignment is overruled.
For his second assignment of error, Loveless states:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING AS SEVERE A SENTENCE UPON DEFENDANT AS IT DID WHEN IT INCREASED DEFENDANT'S SENTENCE FROM 5 DAYS TO 6 MONTHS, WHERE DEFENDANT ADMITTED TO A PROBATION VIOLATION WHICH WAS A TELEPHONE CONTACT WITH HIS CHILD'S MOTHER AND WHICH TOOK PLACE OVER TWO YEARS FROM THE ORIGINAL SENTENCING DATE."
The gist of Loveless' argument under this assignment is that a six month sentence was too severe for a single violation of the "no contact with Holly Suchland" condition of community control.
Although counsel for Loveless acknowledged at the May 13, 2002 revocation hearing that he had seen the "allegations of supervision violation," we have searched the record in vain for a document containing the allegations of violation. Thus, we do not know from the record precisely what Loveless chose not to contest.
Loveless contends that the trial court considered more information than he admitted to, resulting in a longer sentence than what was warranted by his admission.
Because we can't discern precisely what Loveless admitted to, we cannot know precisely by how much the information considered by the trial court exceeded Loveless' admission.
It would appear that the prosecutor's narration in support of revocation tended to establish that the violation Loveless admitted to was by no means the first violation of the "no contact" condition since February 8, 2000:
 "MR. SELVAGGIO (Prosecutor): Thank you, Judge. I've taken the moment to speak with Eric Lease, supervising officer, and in the courtroom today is the party with whom Mr. Loveless is not supposed to have contact and that is Holly Suchland.
 "Judge, Mr. Loveless's problems with this court grew out of a relationship that he had with Holly, who was the victim in the underlying domestic violence offense for which he was placed on supervision. It's a misdemeanor of the first degree.
 "I asked Officer Lease whether Mr. Loveless — whether this is the first time during his period of probation that he has had contact with the victim outside the scope of the authority granted by the Court, and he indicates that Officer Brett Myers's notes from the case history indicates that he has had contact and that he has been warned by Officer Myers not to continue that contact.
 "This case actually came to me in the form of a prosecution report submitted by Deputy Ron Shafer of the sheriff's department, and I had suggested to the sheriff's department to treat the matter as a probation violation and that we would send a copy of the report to the probation officer.
 "When the report was made, the victim had a tape recording of the messages that the Defendant left on her machine. The deputy writes that quote he cusses Holly and calls her names, et cetera, closed quote.
 "In fairness to the Defendant, the Defendant also presented to the deputy that quote Scott also told me his caller ID has had calls on it from her number before closed quote.
 "The victim has indicated in her statement to the sheriff's department that she has had great difficulty with trying to keep him out of her life, that he has left her a note on her car before regarding things he saw. He has kept telephoning her and she has asked him to quit leaving messages on her phone and that any communication regarding the son should be done through her mother, which is Shelia Suchland.
 "Holly takes the position that she is constantly looking over her shoulder not knowing where he is or what he's going to do and that she has left messages for the probation department to take care of her son — I mean, take care of the problem."
Loveless did not object to the prosecutor's narration and was permitted to respond. On this record, we may only interfere with the sentence imposed if we find it rises to the level of plain error. We do not so find and the second assignment is overruled.
The judgment will be affirmed.
GRADY, J. and YOUNG, J., concur.